FILED & ENTERED

MAR 03 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>LUSINE HAKHVERDYAN,<br><br><br><br><br>Debtor. | Case No.: 1:25-bk-11049-VK<br><br>Chapter 7<br><br>**MEMORANDUM OF DECISION DENYING DEBTOR'S (1) "MOTION TO VACATE EXTENSION ORDER, DECLARATION THAT STIPULATIONS ARE VOID AB INITIO, REQUEST TO RESTORE RULE 4007(C) DEADLINE, AND REQUEST FOR SANCTIONS"; (2) "MOTION TO VACATE VOID EXTENSION ORDERS"; (3) "MOTION TO STRIKE ALL UNAUTHORIZED STIPULATIONS"; (4) "MOTION TO SANCTION ATTORNEY MISCONDUCT"; AND (5) "MOTION TO BAR ANY FURTHER § 523 ACTIONS AS TIME-BARRED"**<br><br><u>Hearing:</u><br>Date:   February 26, 2026<br>Time:  2:00 p.m.<br>Place:  Courtroom 301<br>            21041 Burbank Blvd.<br>            Woodland Hills, CA 91347 |

For the reasons discussed below, the Court will deny the following motions filed by debtor Lusine Hakhverdyan ("Debtor"): "Motion to Vacate Extension Order, Declaration that Stipulations Are Void Ab Initio, Request to Restore Rule 4007(c) Deadline, and Request for Sanctions" (the "First Relief Motion") [doc. 34]; "Motion to Vacate Void Extension Orders" [doc. 37]; "Motion to Strike All Unauthorized Stipulations" [doc. 38]; "Motion to Sanction Attorney Misconduct" [doc. 39] and "Motion to Bar Any Further § 523 Actions as Time-Barred" [doc. 40] (collectively, "Debtor's FRCP 60 Motions").[1]

## I.    BACKGROUND

### A.    Debtor's Prepetition Dispute with Swift Financial LLC

In October 2019, Revved Financial Group d/b/a Insurance Intellect Solutions ("Revved") entered into a loan agreement with WebBank to borrow $100,000 (the "Loan"). Declaration of Daren M. Schlecter, Esq. ("Schlecter Decl."), ¶ 5 [doc. 57]. Lusine Hakhverdyan ("Debtor"), who is the 100% owner of Revved, personally guaranteed the Loan. Schedules A/B and H [doc. 1]. Swift Financial LLC ("Swift") is the servicing agent for WebBank. Schlecter Decl., Ex. 1-4.

Following defaults on the Loan, Swift initiated an arbitration proceeding against Revved and Debtor and eventually received an arbitration award for $104,906.44. *Id.*, ¶ 7. In October 2021, the state court confirmed the arbitration award and entered a judgment against Debtor in the amount of $113,845.05 (the "Judgment"). *Id.*, ¶ 8.

In a post-judgment enforcement action in state court, Swift requested the production of documents from Debtor. *Id.*, ¶ 10. On April 9, 2025, the state court ordered Debtor to appear on June 18, 2025 and to produce the requested documents to Swift. *Id.*, Ex. 4.

---

[1] On February 26, 2026, the Court held an evidentiary hearing at which Debtor testified, under oath, about Debtor's FRCP 60 Motions.  Also at that hearing, Debtor's former bankruptcy counsel, Sevan Gorginian, discussed his conduct and his decisions while he was representing Debtor. Unless another citation is identified, the facts stated in this decision are based on Debtor's testimony and Mr. Gorginian's statements made at that hearing.

### B.    Debtor's Chapter 7 Petition and Bankruptcy Counsel

On June 13, 2025, with the legal representation of Sevan Gorginian, Esq., Debtor filed a chapter 7 petition.  In schedule D/E, Debtor included her debt to Swift, and Swift was included in Debtor's master mailing list. The notice of Debtor's chapter 7 case stated that Debtor's meeting of creditors would take place on July 16, 2025 and that the deadline for a creditor to file a complaint to except a debt from discharge under 11 U.S.C. § 523(a)(2), (4) or (6) was September 15, 2025 (the "September 15 Deadline"). This notice was sent to Swift by first class mail [doc. 8].

Debtor's chapter 7 petition disclosed Mr. Gorginian's representation of Debtor. In addition, Mr. Gorginian filed a "Disclosure of Compensation of Attorney For Debtor" (the "Section 329 Disclosure") [doc. 1]. The Section 329 Disclosure states that Mr. Gorginian received a $2,000 flat fee for "services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case."

As set forth in the Section 329 Disclosure, Mr. Gorginian agreed to render the following legal services to Debtor:

    (a)  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

    (b)  Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

    (c)  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof; [and]

    (d)  Two consultations prior to filing the bankruptcy case, attorney present with client at the 341(a) meeting of creditors, review proof of claims and advise accordingly, drafting all necessary petitions and schedules but not amendments, coordinate with trustee's and court's requirements, give notice to creditors of relevant documents filed, and obtain the discharge order.

Section 329 Disclosure [doc. 1].

As set forth in the Section 329 Disclosure, the following services are not included in the $2,000 flat fee: "all adversary proceedings within the bankruptcy case (i.e. 727 or 523 action), amendments to schedules, additional appearance at 341 meeting of creditors, objections to claims, and other pertinent information disclosed in the retainer agreement between the debtor client and the firm." *Id.*

**C.    Debtor's Consensual Document Production to Swift Financial LLC**

On June 13, 2025, the law office of Mr. Gorginian sent an email to Swift's counsel, i.e., Mr. Schlecter, stating that Debtor had filed a chapter 7 case. Schlecter Decl., ¶ 28 and Ex. 5 thereto.  On June 26, 2025, Mr. Schlecter sent an email to Mr. Gorginian, requesting that Debtor provide the following documents to Swift, by July 18, 2025, "to avoid the cost and delay of [Swift] conducting a full 2004 examination:"

    (1) All business bank statements for Revved from October 1, 2019 to close of the business;
    (2) All documents from 2019 for Revved evidencing that Debtor was opening a new location, including any emails/communications to that effect;
    (3) All documents, including electronic files, showing what Debtor did with the loan funds (this could include bank statements);
    (4) All documents evidencing the cause of Debtor's default on the loan; and
    (5) Any and all Cryptocurrency/Bitcoin Statements from January 1, 2019 to present, including Robinhood.

Schlecter Decl., ¶¶ 27 and 28 and Ex. 5 thereto. This email from Mr. Schlecter states: "Nothing in this email shall act as a waiver of my clients [sic] rights to seek other documents consensually from the Debtor, by 2004 examination or to seek an extension of the deadlines set forth under 11 U.S.C. 523 [sic], all of which are expressly and impliedly reserved." Ex. 5 to Schecter Decl.  On July 2, 2025, via email, Mr. Gorginian provided documents and explanations concerning Debtor's actions to Swift. *See id.*

On July 16, 2025, Debtor's first meeting of creditors took place. Mr. Schlecter appeared at the meeting of creditors and questioned Debtor at that meeting. Schlecter Decl., ¶¶ 23-26. Following that first meeting of creditors, on July 16, 2025, Mr. Schlecter again requested that Debtor provide Swift with certain documents. Ex. 5 to Schlecter Decl.; "Declaration of Sevan Gorginian in Response to Debtor's Motions" ("Gorginian Decl."), ¶ 13 [doc. 53].

**D.    The First Extension Stipulation and Order as to Swift Financial LLC**

On July 21, 2025, Mr. Schlecter sent an email to Mr. Gorginian, asking him if Debtor would consent to an extension of time for Swift to file a nondischargeability complaint. In this email, Mr. Schlecter stated that he could "simply subpoena [the documents sought by Swift] through the bankruptcy case." Ex. 6 to Schlecter Decl.

In an email sent to Mr. Schlecter that day, Mr. Gorginian stated: "Yes she will stipulate." Mr. Gorginian further wrote: "Let me know if you need her to sign off on any subpoena to expedite the process. She's an open book and was truthful in her disclosures to your client, at her 341(a) and documents supplied. She can testify more and give more to the best extent possible." *Id*.

In an email sent to Mr. Gorginian on July 24, 2025, Mr. Schlecter stated: "May make sense to stipulate to 60 days on the 523/727 deadline." That day, without obtaining Debtor's consent in advance (or subsequently), Mr. Gorginian returned a signed stipulation to an extension of time for Swift to file a complaint against Debtor under 11 U.S.C. § 523(a)(2), (a)(4) and/or (a)(6) and/or § 727 (the "First Swift Extension Stipulation"). Gorginian Decl., ¶ 9. Before Mr. Gorginian signed the First Swift Extension Stipulation and returned it to Mr. Schlecter, Mr. Gorginian did not send Debtor a draft of the stipulation, nor did Mr. Gorginian disclose to Debtor his decision to provide an extension of time to Swift.

The First Swift Extension Stipulation states that it is "entered into by and between Swift Financial, LLC ('Swift') and Lusin Hakhverdyan ('Debtor'), by and through their respective counsel *after the opportunity for counsel to review and advise the party* . . ." Ex. 7 to Schlecter Decl. [doc. 57]; *see also* doc. 10 (emphasis added). It also states:

> 1.      Tolling Period. Swift is hereby granted an extension of time through and including **November 17, 2025** to: a) timely file a Complaint in this case under 11 U.S.C. § 523(a)(2), (a)(4) and/or (a)(6); b) timely file a Complaint in this case under 11 U.S.C. § 727; c) timely take such other steps which may be needed to preserve or enforce its rights to pursue the Dischargeability Complaint (the 'Tolling Period')[.]
>
> 2.      Document Preservation. The Parties agree that, during the Tolling Period, they shall comply with their obligations to preserve and maintain evidence in light of the claims raised and defenses thereto.

*Id.* (emphasis in original). This stipulation is signed by Mr. Schlecter and Mr. Gorginian. *Id.; see also* Gorginian Decl., ¶¶ 9, 13-15, 17.

On July 25, 2025, Swift filed the First Swift Extension Stipulation [doc. 13]. Later that day, the Court entered an order approving this stipulation (the "First Swift Extension Order"); the First Swift Extension Order extended the deadline for Swift to file a complaint against Debtor through November 17, 2025 (the "November 17 Deadline") [doc. 15]. On July 27, 2025, the Bankruptcy Noticing Center sent a copy of the First Swift Extension Order to Debtor by first class mail [doc. 16].

When Debtor received the First Swift Extension Order from the Court, Debtor did not understand that Mr. Gorginian had agreed to provide this extension of time to Swift. Rather, Debtor believed that Swift had obtained the extension of time by requesting it directly from the Court. Mr. Gorginian did not inform Debtor, until months later, that he had agreed to give Swift this extension of time.

Following the entry of the First Swift Extension Order, Mr. Schlecter and Mr. Gorginian

continued to confer regarding Swift's document requests. Schlecter Decl., ¶ 39 and Ex. 10

thereto.

### E.    The Stipulation to Extend the Deadline for the Chapter 7 Trustee and United States Trustee to Object to Debtor's Discharge

On September 15, 2025, counsel to the chapter 7 trustee (the "Trustee") filed a stipulation

between the Trustee and Debtor to extend the time for the Trustee to file an action against Debtor

pursuant to 11 U.S.C. § 727. This stipulation is signed by counsel to the Trustee and by Mr.

Gorginian.

On September 16, 2025, the Court entered an order approving this stipulation. This order

extended the deadline for the Trustee or the United States Trustee to file a complaint against

Debtor pursuant to 11 U.S.C. § 727 until October 24, 2025 (the "Trustee Extension Order") [doc.

23]. A copy of the Trustee Extension Order was sent to Debtor by United States mail and served

electronically on Mr. Schlecter and other counsel [doc. 24].

Mr. Gorginian has represented that, at the request of the Trustee, he unilaterally granted

this extension. Mr. Gorginian states that he granted this extension in order to avoid the Trustee's

filing of a complaint to deny Debtor's discharge. Gorginian Decl., ¶¶ 25-28.

### F.    Continued Discussions Between Mr. Schlecter and Mr. Gorginian

On September 5, 2025, before the September 15 Deadline and the extended November 17

Deadline, Swift filed a motion to authorize a Fed. R. Bankr. P. ("Rule") 2004 examination and

production from Wells Fargo Bank regarding Debtor and Debtor's businesses' bank accounts

and banking records (the "Swift Rule 2004 Motion") [doc. 20].

Attached as Ex. A to the Swift Rule 2004 Motion is a "Stipulation By and Between

Creditor Swift Financial LLC and Lusine Hakhverdyan for FRBP 2004 Production of

Documents From Wells Fargo by Subpoena." Among other things, this stipulation states that "Debtor consents to Swift's subpoena to Wells Fargo ('WF') for any and all bank statements, applications, communications and other documents requested in the attached Schedule 'A' pursuant to FRBP 2004 and Local Bankruptcy Rule 2004-1." [doc. 20]. This stipulation apparently is signed by Mr. Schlecter and Mr. Gorginian. *See also* Gorginian Decl., ¶ 13.

On September 29, 2025, the Court entered an order granting the Swift Rule 2004 Motion. In accordance with that order, Wells Fargo Bank was required to produce documents related to Debtor's personal bank accounts and bank accounts of her businesses by October 23, 2025 [doc. 28].

On October 23, 2025, Mr. Schlecter's law office received Debtor's personal bank account statements from Wells Fargo Bank. Schlecter Decl., ¶ 47. Subsequently, Mr. Schlecter and Mr. Gorginian continued to discuss, via email, the merits of an action to determine that Debtor's indebtedness to Swift was not eligible for discharge. Schlecter Decl., ¶ ¶ 48-50 and Ex. 10 thereto.

In an email sent on November 5, 2025, Mr. Gorginian states:

> Hi Darren – I reviewed your letter and spoke to my client.  Attached please find my correspondence addressing the allegations in your letter and further documentary support as to how the funds were spent. . . . I ask you to review the attached letter and transactions outlined by my client.  I am hopeful you will agree with my assessment that there is no claim for 523(a) but in the event you are not convinced, please call me by phone before filing a complaint.

Ex. 10 to Schlecter Decl. In an email sent to Mr. Gorginian on November 6, 2025, Mr. Schlecter requested additional supporting documents. *Id.* In response, in an email sent to Mr. Schlecter on November 7, 2025, Mr. Gorginian offered to provide "more documents, to set up a Zoom 2004 examination, or chat on the phone." In this email, Mr. Gorginian represented that Debtor "is ready to explain and testify further in support of her position." *Id.*

### G.    The Second Extension Stipulation and Order as to Swift Financial LLC

On November 14, 2025, Swift filed a second stipulation regarding the deadline to file a complaint against Debtor (the "Second Swift Extension Stipulation," and together with the First Swift Extension Stipulation, the "Swift Extension Stipulations") [doc. 31]. Like the First Swift Extension Stipulation, the Second Swift Extension Stipulation states that it is "entered into by and between Swift Financial, LLC ('Swift') and Lusine Hakhverdyan ('Debtor'), by and through their respective counsel *after the opportunity for counsel to review and advise the party . . .*" Ex. 11 to Schlecter Decl. [doc. 57]; *see also* doc. 31 (emphasis added). This stipulation contains the same provisions as the First Swift Extension Stipulation, except that the extension provided to Swift is through December 16, 2025. *Id.*  Like the First Swift Extension Stipulation, this stipulation is signed by Mr. Schlecter and Mr. Gorginian. *Id.; see also* Gorginian Decl.*, ¶¶* 17-21 and 23.

After Debtor learned about the second extension of time received by Swift, Debtor sent an email to Mr. Gorginian "questioning why he was not rejecting Swift's extension request and why he was not communicating with me about extensions." "Debtor's Reply to Swift's Omnibus Opposition" [doc. 58]. As stated by Debtor,

> At that time, I believed any extension was something the Court granted based on creditor request, and I did not understand that my attorney was stipulating to extend the § 523 deadline without my consent.

*Id.* In response to Debtor's questioning, Mr. Gorginian informed her that he had granted the extensions of time to Swift, without getting Debtor's consent.

Mr. Gorginian has acknowledged that he acted unilaterally in agreeing to both of the requested extensions of time to Swift. Mr. Gorginian contends that granting each of these extensions, first from September 15, 2025 to November 17, 2025 and then to December 16,

2025, was Mr. Gorginian's decision to make, as Debtor's counsel. Gorginian Decl.*, ¶¶ 3, 5, 9,

11, 15, 17, 18, 20, 21, 23. As stated by Mr. Gorginian: "Unfortunately, Debtor believes I should

have [denied Mr. Schlecter's request for an extension] and not grant the extension, cross our

fingers, and pray that Mr. Schlecter would have missed the deadline and not file a

nondischargeability complaint by the deadline. This is speculative and false." *Id.*, ¶¶ 19 and 21.

"Granting stipulations to extend time to file a complaint is within my discretion and in her best

interest." *Id.*, ¶ 11.

On November 18, 2025, the Court entered an Order approving the Second Swift

Extension Stipulation (the "Second Swift Extension Order," and together with the First

Extension Order, the "Swift Extension Orders"); the Second Swift Extension Order further

extended the deadline for Swift to file a complaint against Debtor until December 16, 2025 [doc.

33].

### H.    Debtor's FRCP 60 Motions

On November 19, 2025, Debtor, acting in pro per, filed the First Relief Motion [doc. 34].

After Debtor filed the First Relief Motion, on November 24, 2025, Swift filed a complaint

against Debtor, asserting nondischargeability of the Judgment pursuant to 11 U.S.C. § 523(a)(2),

(4) and (6) [doc. 1 in Adv. Proceeding No. 1:25-ap-01077]. On November 25, 2025, Debtor filed

four more of Debtor's FRCP 60 Motions [docs. 37, 38, 39 and 40].

On January 29, 2026, Swift filed an "Omnibus Opposition to the Motions to Vacate"

("Omnibus Opposition") [doc. 57]. Swift argues that, when Mr. Gorginian agreed to the Swift

Extension Stipulations, he acted pursuant to apparent and implied authority. As a result, Swift

contends that Debtor is personally bound to the Swift Extension Stipulations. Omnibus

Opposition, pp. 10-11.

On February 3, 2026, Debtor filed a reply to the Omnibus Opposition [doc. 58], and on February 17, 2026, Debtor filed a supplemental brief [doc. 59].

## II.    LEGAL AUTHORITY

### A.    The Deadlines to File Objections to Discharge and Ability to Extend the Deadlines

With respect to the deadline to object to a chapter 7 debtor's discharge pursuant to 11 U.S.C. § 727, Rule 4004 states:

> (a)    Time to Object to Discharge; Notice.
>
> (1)    *Chapter 7.*  In a chapter 7 case, a complaint, or a motion under    § 727(a)(8) or (9) – objecting to a discharge must be filed within 60 days after the first date set for the § 341(a) meeting of creditors.
> …
> (b)    Extension the Time to File an Objection.
>
> (1)    *Motion Before the Time Expires.*  On a party in interest's motion and after notice and hearing, the court may, for cause, extend the time to object to a discharge.  The motion must be filed before the time has expired…

As concerns the deadline to object to the dischargeability of debts pursuant to 11 U.S.C. § 523, Rule 4007(c) states:

> Chapter 7, 11, 12, or 13-Time to File a Complaint Under § 523(c); Notice of Time; Extension.  …[A] complaint to determine whether a debt is dischargeable under § 523(c) must be filed within 60 days after the first date set for the § 341(a) meeting of creditors….  On a party in interest's motion filed before the time expires, the court may, after notice and a hearing and for cause, extend the time to file.

"The power to extend the 60-day deadlines prescribed in the Rules rests entirely within the discretion of the bankruptcy judge and should not be granted without a showing of good cause, and without proof that the creditor acted diligently to obtain facts within the bar date…but was unable to do so." *In re Bomarito*, 448 B.R. 242, 248 (Bankr. E.D. Cal. 2011) (internal citations and quotations omitted). "The movant seeking an extension of time for cause must establish at least a reasonable degree of due diligence to be accorded the requested extension."

*Id.* at 248 (internal citations and quotations omitted).

### B.    Express, Apparent and Implied Authority to Act on Client's Behalf

When a case is in federal court pursuant to federal question jurisdiction, federal common law controls an attorney's authority to enter into stipulations and settlements. *Hamilton v. Willms*, No. 1:02-cv-6583 AWI SMS, 2007 WL 2558615, at *7 (E.D. Cal. Sept. 4, 2007); *see also Kelley v. Euromarket Designs, Inc.*, No. CIVS07-0232 RRB EFB, 2008 WL 109332, at *3 (E.D. Cal. Jan. 8, 2008).

Pursuant to federal common law, an attorney's ability to bind a client to the consequences of the attorney's actions is governed by the principals of agency.

> The Restatement of Agency defines agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). The legal consequences of an agent's actions may be attributed to a principal when the agent is acting within its authority. Restatement (Third) of Agency § 2 intro. note (2006).

*Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939–40 (9th Cir. 2017).

The legal consequences of an agent's actions may be attributed to a principal when the agent has actual authority (express or implied) or apparent authority. Restatement (Third) of Agency § 2 intro. note (A.L.I. 2006).

### 1.    Express Authority

An agent acts with express authority when a principal directly states that the agent may perform a particular act on the principal's behalf. *See Salyers v. Metro. Life Ins. Co.*, 871 F.3d at 940 ("Express actual authority derives from an act specifically mentioned to be done in a written or oral communication.").

### 2. Apparent Authority

As stated in the Restatement (Third) Of Agency § 2.03 (A.L.I. 2006):

> Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal *and that belief is traceable to the principal's manifestations*.

Emphasis added. "[I]n order to create apparent authority, the principal must manifest to the third party that he 'consents to have the act done on his behalf by the person purporting to act for him.'" *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989) (quoting Restatement (Second) of Agency § 27 (A.L.I. 1958)). Explicit statements made by a principal directly to a third party and statements made by other parties concerning an agent's authority that reach the third party and are traceable to the principal are examples of a "principal's manifestations" which can credibly result in the third party believing a purported agent has authority to act on the principal's behalf. Restatement (Third) Of Agency § 2.03 cmt. c (A.L.I. 2006). In some circumstances, the conduct of a principal can be a non-verbal manifestation, such as when a "principal's acts speak so loudly that explicit verbal communication is unnecessary." *Id.* § 3.03 cmt. b.

### 3. Implied Authority

Restatement (Third) Of Agency § 2.01 cmt. b (A.L.I. 2006) states:

> "Implied authority" is often used to mean actual authority either (1) to do what is necessary, usual, and proper to accomplish or perform an agent's express responsibilities or (2) to act in a manner in which an agent believes the principal wishes the agent to act based on the agent's reasonable interpretation of the principal's manifestation in light of the principal's objectives and other facts known to the agent. These meanings are not mutually exclusive. Both fall within the definition of actual authority.

In *England v. Doyle*, 281 F.2d 304 (9th Cir. 1960), the Ninth Circuit Court of Appeals noted that "an attorney has implied authority to make agreements and stipulations with respect to

-13-

purely procedural matters during the regular course of litigation." The Court of Appeals further explained that an attorney "has no such authority to enter into agreements which involve a waiver of any of his client's substantial rights or the imposition upon him of new liabilities or burdens." *Id.* at 308-309 (internal citations omitted); *see also Lerner Master Fund, LLC v. Page (In re Paige)*, 476 B.R. 867, 870 (Bankr. M.D. Pa. 2012) ("In matters concerning the management of the litigation, implied authority is initially presumed for the sake of judicial efficiency; an attorney may typically enter into procedural stipulations and agreements.").

In *Paige*, the debtors disputed that they had provided their attorney with the authority to make a stipulation to extend the deadline to file a complaint challenging the dischargeability of their debt; consequently, the debtors contended that a stipulated extension of time between the parties' counsel was not binding on them.

The court held that the extension of the objection to discharge deadline "involved mere procedural issues." *Id.*, 476 B.R. at 871.  As explained by the court:

> [I]t is initially presumed that [the debtors' counsel] had the implied authority to agree to the stipulation. The joint stipulation did not deny the Paiges any substantive rights; it merely dealt with a filing deadline, set, not by statute, but by Federal Rule of Bankruptcy Procedure 4007. The joint stipulation did not burden the Paiges in any way, nor did it deprive the Paiges of the dischargeability of their debt.

*Id.* When the totality of circumstances was weighed, the *Paige* court held there was not enough evidence to rebut the presumption of implied authority that generally attaches to procedural matters, such as the stipulation to an extension of time by the debtors' counsel.

## C.  Deadlines Imposed by the Federal Rules of Bankruptcy Procedure Are Procedural

In *In re Hill*, 811 F.2d 484 (9th Cir. 1987), the Ninth Circuit Court of Appeals considered whether Rules 4007(c) and 9006(d) abridge affected parties' substantive rights, as codified in 11 U.S.C. § 523. In *Hill*, more than 60 days after a debtor's first meeting of creditors, a creditor

filed a complaint pursuant to § 523(a)(6). On appeal, the creditor argued that the deadline imposed in Rule 4007(c) is functionally a statute of limitations to bring a complaint to determine the nondischargeability of debts under § 523(a)(2), (4) and (6). By imposing a non-statutory deadline to bring a complaint for nondischargeability, the creditor contended that Rule 4007(c) improperly amended the creditor's substantive rights.

The Court of Appeals rejected the creditor's argument:

> Although rule 4007(c) in some respects resembles a statute of limitations, its effects are quite different. Statutes of limitations affect primary conduct—behavior apart from any litigation—by providing repose to potential defendants. Such statutes are not designed to manage ongoing litigation. In contrast, rule 4007(c) is triggered only by certain events within bankruptcy litigation. The rule does not grant repose to the debtor or anyone else. Instead, it avoids delay by requiring a party to file promptly rather than just prior to the final settlement of the bankruptcy case. *See* Bankr. R. 9006 advisory committee's note (such rules serve the "interest of prompt administration of bankruptcy cases"). Therefore, it affects procedural not substantive rights.

*Id.* at 486–87.

## D.    Federal Rule of Civil Procedure 60(b)

Federal Rule of Civil Procedure ("FRCP") 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

FRCP 60(b)(1)-(6).

### 1.  FRCP 60(b)(1) – Relief from Orders Based on Mistake, Inadvertence, Surprise, or Excusable Neglect

FRCP 60(b)(1) provides, "[o]n motion and just terms, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect."

> For purposes of subsection (b)(1), parties should be bound by and accountable for the deliberate actions of themselves and their chosen counsel. This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct. Such mistakes are more appropriately addressed through malpractice claims.

*Latshaw v. Trainer Wortham & Co.*, 452 F.3d 1097, 1101 (9th Cir. 2006).[2]

### 2.  FRCP 60(b)(3) – Relief from Orders Based on Fraud, Misrepresentation or Misconduct by an Opposing Party

FRCP 60(b)(3) provides: "[o]n motion and just terms, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ...  fraud ("whether previously called intrinsic or extrinsic) misrepresentation, or misconduct by an opposing party." Subsection (b)(3) permits relief only when the fraud, misrepresentation or misconduct was committed by "an opposing party." *Latshaw v. Trainer Wortham & Co.*, 452 F.3d at 1102; *Valley National Bank v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1442–43 (9th Cir.1991) (declining to apply FRCP 60(b)(3) when alleged fraud was not committed by opposing party).

### 3.  FRCP 60(b)(4) – Orders Void for Lack of Jurisdiction

Under FRCP 60(b)(4), a judgement or order may be set aside as void for lack of

---

[2] In these motions, Debtor occasionally refers to inaccurate or nonexistent case citations. For example, in the First Relief Motion, Debtor cites "*Whittaker v. Otto*, 2014 WL 37845 (9ᵗʰ Cir.)," with the description "Counsel lacks authority to alter rights without direct permission." This Westlaw citation leads to *Harmer v. Pennsylvania Board of Probation and Parole*, 83 A.3d 293 (Commonwealth Court of Pennsylvania 2014), which does not discuss the authority of counsel. Also in the First Relief Motion, Debtor cites to "*In re Chionis*, 531 B.R. 52 (coercive litigation threats violate bankruptcy protection.)"  *Chionis* is not in 531 B.R. 52; it is an unpublished decision of the Ninth Circuit Bankruptcy Appellate Panel which can be found at *In re Chionis*, 2013 WL 6840485 (9ᵗʰ Cir. BAP December 27, 2013) (concerning action for violation of discharge injunction; this decision is inapposite to Debtor's FRCP 60 Motions).

jurisdiction generally "only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds, Inc. v. Espinosa,* 130 S.Ct. 1367, 559 U.S. 260, 271, 176 L.Ed.2d 158 (2010) (for purposes of FRCP 60(b)(4), order that confirms discharge of student loan debt, in absence of undue hardship finding or adversary proceeding, is not a void judgment).

"A final judgment is 'void' for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute or over the parties to be bound, or acted in a manner inconsistent with due process of law." *United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999).

A bankruptcy court's jurisdiction includes all matters arising under, arising in, or related to a case under the Bankruptcy Code. Certain matters arising directly under the Bankruptcy Code are "core proceedings." Included in core proceedings are "matters concerning the administration of the estate," "objections to discharge," and "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(A), (I) and (J).

As explained by the Supreme Court in *United Student Aid Funds*, the Federal Rules of Bankruptcy Procedure are "procedural rules adopted by the Court for the orderly transaction of its business" and "are not jurisdictional." *Id.*, 559 U.S. at 272 (internal citation and quotation marks omitted). *See also Schunck v. Santos (In re Santos)*, 112 B.R. 1001, 1006 (9th Cir. BAP 1990) ("deadlines for filing dischargeability complaints and objections to discharge set forth in Rules 4007(c) and 4004(a) are not jurisdictional time limits").

### 4. FRCP 60(b)(6) – Relief from Orders Due to Extraordinary Circumstances and to Prevent Manifest Injustice

FRCP 60(b)(6) provides that, on motion, "the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for ... any other reason justifying relief

from the operation of the judgment."

"Judgments are not often set aside under Rule 60(b)(6). Rather, the Rule is to used

sparingly as an equitable remedy to prevent manifest injustice . . . ." *Latshaw v. Trainer*

*Wortham & Co.*, 452 F.3d at 1103 (internal citations and quotations omitted). "The burden is on

the moving party to bring himself within the purviews of Rule 60(b)(6)." *In re Hammer*, 112

B.R. 341, 345 (9th Cir. BAP 1990).

## III.    ANALYSIS

### A.    Whether the Swift Extension Stipulations Are Binding on Debtor

#### 1.    Actual Express Authority

Mr. Gorginian has acknowledged that he acted unilaterally in agreeing to provide Swift

with the extensions of time to file a complaint against Debtor. Debtor did not explicitly assent

nor instruct Mr. Gorginian to enter into the Swift Extension Stipulations. As a result, Mr.

Gorginian did not possess express authority.

#### 2.    Apparent Authority

Swift argues that, although Mr. Gorginian may not have express authority, he had

apparent authority from Debtor, which is sufficient to bind Debtor to the Swift Extension

Stipulations. Mr. Schlecter understood that Mr. Gorginian was acting expressly on Debtor's

behalf. Consequently, Swift relied on Mr. Gorginian's consent to the Swift Extension

Stipulations. Schlecter Decl., ¶ 31-32, 49 and 52.

Mr. Schlecter's reliance on Mr. Gorginian's acts and representations is not sufficient to

establish *apparent* authority for Mr. Gorginian, acting as an agent, to bind Debtor as a principal.

In order to establish "apparent authority," Swift must show that Swift relied upon a statement or

other manifestations of *Debtor*. Swift has not shown that Debtor, or anyone other than Mr.

Gorginian, directly communicated with Swift or its attorney, or that *Debtor* directly manifested to Swift that she assented to the Swift Extension Stipulations.

### 3. Implied Authority

With respect to the First Swift Extension Stipulation, Mr. Gorginian anticipated that granting Swift's requested extension of time would enable Debtor to provide Swift with responsive documents and convince Swift not to file a complaint against Debtor. Gorginian Decl., ¶¶ 15, 17 and 19.

As concerns the Second Swift Extension Stipulation, in light of the extended November 17 Deadline to file a nondischargeability action, which Mr. Gorginian had agreed to provide, and Swift's ability to file a complaint before obtaining a second extension of time, Mr. Gorginian agreed to execute the Second Swift Extension Stipulation. Gorginian Decl., ¶¶ 16-17, 21, 23. Mr. Gorginian has represented that his intent was to have additional time in order to dissuade Swift from filing a complaint against Debtor.

Regarding procedural matters during the regular course of litigation, an attorney acts with implied authority and may bind their client through words and actions. *See England v. Doyle*, 281 F.2d at 309. The extensions of the time for Swift to file a complaint to determine the nondischargeability of its debt are procedural. The Swift Extension Stipulations do not deny Debtor any substantive rights, i.e., they did not eliminate Debtor's ability to obtain a discharge or determine the dischargeability of any debt. Rather, they impacted Swift's deadline under Rule 4007 to file a complaint against Debtor, in order to assert that its debt is not subject to discharge. Because the Swift Extension Stipulations involve procedural matters, Mr. Gorginian had implied authority to agree to the Swift Extension Stipulations.

**B.      Debtor's Request to Vacate the Swift Extension Orders Pursuant to FRCP 60(b)(1)**

Debtor asserts that FRCP 60(b)(1) is a basis to void the Swift Extension Orders. However, Mr. Gorginian's consent to the Swift Extension Stipulations is not an issue of mistake, inadvertence, surprise or excusable neglect. Instead, it was an intentional procedural tactic used by Mr. Gorginian with the intention of providing Debtor with additional time to convince Swift not to file a complaint against Debtor under 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6) and/or 727.

The Court will not set aside the Swift Extension Orders due to mistake, inadvertence, surprise, or excusable neglect pursuant to FRCP 60(b)(1).

**C.      Debtor's Request to Vacate the Swift Extension Orders Pursuant to FRCP 60(b)(3)**

Debtor asserts that FRCP 60(b)(3) is a basis to void the Swift Extension Orders. FRCP 60(b)(3) permits relief only when the fraud was committed by an opposing party. In this case, Debtor has not established that Swift or Mr. Schlecter engaged in fraud or misconduct. The communications between Mr. Schlecter and Mr. Gorginian regarding the nondischargeability of the Judgment, and Swift's related document production or settlement demands, do not constitute fraud or misconduct.

The Court will not set aside the Swift Extension Orders on the basis of fraud, misrepresentation, or misconduct by Swift or its counsel pursuant to FRCP 60(b)(3).

**D.      Debtor's Request to Vacate the Second Extension Order Pursuant to FRCP 60(b)(4)**

Debtor asserts that the Court lacked jurisdiction to enter the Second Extension Order on November 18, 2025. Although Debtor did not consent to Mr. Gorginian's decision to provide either extension of time to Swift, the Court had subject matter jurisdiction to enter both Swift Extension Orders.

The Court will not set aside the Swift Extension Orders on the basis that the orders are void for lack of jurisdiction.

### E.      Debtor's Request to Vacate the Swift Extension Orders Pursuant to FRCP 60(b)(6)

Debtor asserts that the Swift Extension Orders should be vacated pursuant to FRCP 60(b)(6) because her attorney took actions contrary to her wishes, and she would have objected to the Swift Extension Stipulations if she had known her attorney was consenting to them. Because Mr. Gorginian had implied authority to provide the extensions, Swift relied on the Swift Extension Stipulations and the related orders. If Swift had known that Debtor disagreed with Mr. Gorginian's decision to provide these extensions, before the September 15 Deadline, Swift could have timely filed a motion to continue that deadline under Rules 4004 and 4007 or filed a complaint against Debtor to assert its claims that the Judgment is nondischargeable.

From the beginning of Debtor's case, Swift acted diligently to obtain facts and evaluate whether it had claims that the Judgment is a nondischargeable debt. On July 16, 2025, Mr. Schlecter appeared at Debtor's initial meeting of creditors and questioned Debtor. Schlecter Decl., ¶¶ 23-26. Later that day, Mr. Schlecter sent an email to Mr. Gorginian requesting documents from Debtor.  Ex. 5 to Schlecter Decl. On July 21, 2025, approximately one week after the initial meeting of creditors, Mr. Schlecter contacted Mr. Gorginian, expressed his intention to subpoena documents from Debtor's bank and requested an extension of the September 15 Deadline, in case the bank was delayed in its response. *See* Ex. 6 to Schlecter Decl.

On September 5, 2025, well before the November 17 Deadline, Swift filed the Swift Rule 2004 Motion.  Following receipt of Debtor's records from Wells Fargo Bank, Mr. Schlecter sent Mr. Gorginian an email regarding the merits of a nondischargeability action. Schlecter Decl., ¶

48 and Ex. 10 thereto. Mr. Gorginian and Mr. Schlecter continued to correspond via email, and on November 7, 2025, Mr. Gorginian offered to provide "more documents, to set up a Zoom 2004 examination, or chat on the phone[,]" representing that Debtor "is ready to explain and testify further in support of her position." Ex. 10 to the Schlecter Decl.

If Swift had timely filed a motion to obtain an extension of time, which Swift apparently was prepared to do, Swift's efforts to complete its investigation before filing the Swift Complaint would have constituted cause to extend the September 15 Deadline. Swift was unaware that Debtor did not consent to Mr. Gorginian's execution of the Swift Extension Stipulations. Because Mr. Gorginian agreed to the requested extensions on Debtor's behalf, Swift did not file motions to obtain extensions of time, nor file the Swift Complaint, before the September 15 Deadline or the November 17 Deadline.

Finally, the Swift Extension Stipulations did not deprive Debtor of her discharge or determine the dischargeability of any debt. Accordingly, the Swift Extension Orders are not manifestly unjust.

Because Debtor has not met her burden to establish sufficient grounds to vacate the Swift Extension Orders pursuant to FRCP 60(b)(6), the Court will deny Debtor's FRCP 60 Motions on that ground.

**F.    Debtor's Request for Sanctions**

Debtor requests that the Court sanction Mr. Schlecter for the positions which he asserted in his communications with Mr. Gorginian about the production of documents, Swift's intentions to file the Complaint and Swift's settlement demand. These communications do not constitute cause to sanction Mr. Schlecter.

1    With respect to Mr. Gorginian's unilateral decision to enter into each of the Swift

2    Extension Stipulations, and his failure to reasonably consult with Debtor before he did so, the

3    Court is ordering that Mr. Gorginian disgorge fees which he received from Debtor in connection

4    with her bankruptcy case. If Debtor seeks further relief directly from Mr. Gorginian or

5    concerning his conduct as her attorney, Debtor may do so before the State Bar of California or in

6    another nonbankruptcy forum.

## IV.    CONCLUSION

The Court will deny Debtor's FRCP 60 Motions.

###

Date: March 3, 2026

Victoria S. Kaufman
United States Bankruptcy Judge