FILED & ENTERED

MAR 03 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Pgarcia DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>LUSINE HAKHVERDYAN,<br><br>Debtor. | Case No.: 1:25-bk-11049-VK<br><br>Chapter 7<br><br>**MEMORANDUM OF DECISION GRANTING IN PART DEBTOR'S "MOTION TO REMOVE ATTORNEY AND FOR FEE DISGORGEMENT"**<br><br><u>Hearing:</u><br>Date: February 26, 2026<br>Time: 2:00 p.m.<br>Place: Courtroom 301<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91347 |

For the reasons set forth below, the Court will grant, in part, the "Motion to Remove Attorney and for Fee Disgorgement" (the "Disgorgement Motion"), filed in pro per by Lusine Hakhverdyan ("Debtor"). Following the filing of her Substitution of Attorney, Debtor represents herself in her bankruptcy case. Accordingly, Debtor's request that her prior attorney of record, Sevan Gorginian, Esq., be removed as her legal counsel in Debtor's bankruptcy case is moot.

## I. BACKGROUND

The Disgorgement Motion relates to Debtor's "Motion to Vacate Extension Order, Declaration that Stipulations Are Void Ab Initio, Request to Restore Rule 4007(c) Deadline, and Request for Sanctions" (the "First Relief Motion"); "Motion to Vacate Void Extension Orders"; "Motion to Strike All Unauthorized Stipulations"; "Motion to Sanction Attorney Misconduct" and "Motion to Bar Any Further § 523 Actions as Time-Barred" (collectively with the First Relief Motion, "Debtor's FRCP 60 Motions"). Debtor's FRCP 60 Motions are filed in Debtor's bankruptcy case, Case No. 1:25-bk-11049 (the "Bankruptcy Case").

The full factual background regarding the Disgorgement Motion and Debtor's FRCP 60 Motions is included in the Court's ruling on Debtor's FRCP 60 Motions and is incorporated in this decision.

In summary, the Disgorgement Motion concerns the unauthorized decisions of Debtor's former bankruptcy counsel, Mr. Gorginian, to agree multiple times to extend the deadline under Fed. R. Bankr. P. 4004 and 4007(c) for a creditor to file a complaint against Debtor based on 11 U.S.C. § 523(a)(2), (4) and (6) or 11 U.S.C. § 727. As a result of related stipulations, signed by Mr. Gorginian and creditor's counsel, the Court entered orders to extend the deadlines for that creditor, Swift Financial, LLC ("Swift"), to file a complaint under § 523(a)(2), (4) and (6) and § 727 against Debtor, first from the original deadline of September 15, 2025 to November 17, 2025, and then from the extended deadline of November 17, 2025 to December 16, 2025 [Bankruptcy Case, docs. 13, 15, 31 and 33].

On November 19, 2025, Debtor filed the First Relief Motion in pro per [Bankruptcy Case, doc. 34]. After Debtor filed the First Relief Motion, on November 24, 2025, Swift filed a Complaint against Debtor asserting claims for nondischargeability of its debt based on 11 U.S.C. § 523(a)(2), (4) and (6) (the "Swift Complaint") [Adv. Pr. No. 1:25-ap-1077, doc. 1].

On November 25, 2025, Debtor filed the other four of Debtor's FRCP 60 Motions in pro per [Bankruptcy Case, docs. 37, 38, 39 and 40]. On December 12, 2025, Debtor filed the Disgorgement Motion and her Answer to the Swift Complaint in pro per [Bankruptcy Case, doc. 48; Adv. Pr. No. 1:25-ap-1077, doc. 5].

On December 13, 2025, Debtor filed a Substitution of Attorney, for Debtor to be self-represented, in place of having the legal representation of Mr. Gorginian; Mr. Gorginian signed the Substitution of Attorney [Bankruptcy Case, doc. 49]. On December 25, 2025, Mr. Gorginian filed his declaration in response to the Disgorgement Motion and Debtor's FRCP 60 Motions (the "Gorginian Decl.") [doc. 53]. On December 29, 2025, Debtor filed a response to the Gorginian Decl. [doc. 54].

On February 26, 2026, with respect to the Disgorgement Motion and Debtor's FRCP 60 Motions, the Court held an evidentiary hearing at which Debtor testified, under oath, about these motions. Also at that hearing, Mr. Gorginian discussed his conduct and decisions while he was serving as Debtor's bankruptcy counsel.

## II. LEGAL STANDARD

11 U.S.C. § 329 states:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—
>
> (1) the estate, if the property transferred—
>
> (A) would have been property of the estate; or

> (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
>
> (2) the entity that made such payment.

"What constitutes reasonableness is a question of fact to be determined by the particular circumstances of each case. The requested compensation may be reduced if the court finds that the work done was excessive or of poor quality." 4 *Collier on Bankruptcy* § 329.04[1], at 329-21 (16th ed. 2023). "As the fact finder, the bankruptcy court has great discretion in evaluating the sufficiency of the evidence provided by an attorney in support of the fees being requested." *In re Gilsvik*, 673 B.R. 745, 751 (9th Cir. BAP 2025) (internal citation and quotation omitted); *see also Hale v. United States Tr.*, 509 F.3d 1139, 1147 (9th Cir. 2007).

Regarding the scope of representation and allocation of authority, California Rule of Professional Conduct ("CRPC") 1.2(a) states:

> Subject to rule 1.2.1, a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by rule 1.4, shall reasonably consult with the client as to the means by which they are to be pursued. Subject to Business and Professions Code section 6068, subdivision (e)(1) and rule 1.6, a lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. Except as otherwise provided by law in a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

As concerns communication with clients, CRPC 1.4 provides:

> (a) A lawyer shall:
>
> ***
>
> (2) reasonably* [FN1] consult with the client about the means by which to accomplish the client's objectives in the representation; [and]
>
> (3) keep the client reasonably* informed about significant developments relating to the representation…
>
> ***
>
> (b) A lawyer shall explain a matter to the extent reasonably* necessary to permit

the client to make informed decisions regarding the representation.

The asterisks (*) identify a word or phrase defined in the terminology rule, CRPC 1.0.1. CRPC 1.0.1. defines "reasonably" as follows: "'reasonably' when used in relation to conduct by a lawyer means the conduct of a reasonably prudent and competent lawyer."

Pursuant to Fed. R. Bankr. P. 2017, on motion of the debtor, the court may, after notice and a hearing, determine whether a debtor's direct payment of money to an attorney for services rendered was excessive if it was made in contemplation of the filing of a bankruptcy petition by the debtor.

**III. ANALYSIS**

As concerns Debtor's request for fee disgorgement, the Court will grant the relief requested in the Disgorgement Motion and order Mr. Gorginian to return to Debtor $1,662 of the $2,000 flat fee which Debtor paid to him, i.e., $2,000 minus $338 in fees that were paid to the Court for the filing of Debtor's chapter 7 petition. In addition, if he has not already done so, Mr. Gorginian must provide the entire case file to Debtor.

Pursuant to CRPC 1.4(a)(2), Mr. Gorginian was obligated to reasonably consult with Debtor about how to accomplish Debtor's objectives in her bankruptcy case. In addition, CRPC 1.4(a)(3) mandates that Mr. Gorginian was to keep Debtor reasonably and timely informed about significant developments relating to her bankruptcy case, *i.e.* that Swift's counsel had requested that Debtor agree to extensions of time for Swift to file a complaint to object to Debtor's discharge and to determine the dischargeability of Swift's debt. *See* Fed. R. Bankr. P. 4004 and 4007(c). Finally, under CRPC 1.4(b), before Mr. Gorginian signed stipulations to grant these extensions of time to Swift, Mr. Gorginian should have discussed Swift's requests for these extensions with Debtor, so that Debtor could make an informed decision about granting, or

denying, each of the requests.

Mr. Gorginian has acknowledged that he did not send drafts of the stipulations to Debtor, before Mr. Gorginian signed them, nor did Mr. Gorginian consult with Debtor when Swift's counsel requested that Debtor agree to provide extensions of the deadlines. *See* Gorginian Decl., ¶¶ 9, 11, 17, 18, 21 [doc. 53]. Mr. Gorginian contends that he was entitled to provide these extensions of time to Swift, unilaterally, without informing Debtor about Swift's requests or seeking Debtor's consent to those extensions.

In July 2025, Mr. Gorginian agreed to provide Swift with the first extension of time, to November 17, 2025. Mr. Gorginian made this decision significantly before the September 15 deadline for Swift to file a complaint against Debtor based on § 523(a)(2), (4) and (6) or § 727. At that time, there was not good reason for Mr. Gorginian to sign that stipulation and agree to provide Swift with that extension of time, without first discussing with Debtor: (1) Swift's request that Debtor agree to that extension; and (2) Mr. Gorginian's intentions to provide the requested extension to Swift.

Debtor testified that, when she received a copy of the order from the Court which referred to, and granted, the first extension of time to Swift, Debtor did not understand that Mr. Gorginian had agreed to provide that extension; Mr. Gorginian had not discussed with Debtor his decision to do that. When Debtor asked Mr Gorginian about the first extension that Swift obtained, Mr. Gorginian did not inform Debtor that he had agreed to provide that extension and signed a stipulation with Swift. Debtor's mistaken impression was that the Court granted the first extension to Swift, on Swift's request, without Mr. Gorginian having agreed to it.

After Mr. Gorginian unilaterally decided to give a *second* extension of time to Swift, Debtor learned of that order and expressed her concerns about Swift getting another extension of

time to file a complaint against her. In response, Mr. Gorginian told Debtor that he had decided to give that second extension of time, as well as the prior extension of time, to Swift. Debtor never agreed to those decisions made by Mr. Gorginian. Debtor's position is that she has been betrayed by Mr. Gorginian, her lawyer, because: (1) he did not advise Debtor that Swift sought her agreement to these extensions of time; and (2) without obtaining Debtor's consent, Mr. Gorginian agreed to provide these extensions of time to Swift.

In response to the Disgorgement Motion and Debtor's FRCP 60 Motions, Mr. Gorginian insists that he had no obligation to submit drafts of the stipulations with Swift to Debtor or to seek Debtor's consent to his determinations, before he signed the stipulations as her lawyer. Mr. Gorginian is adamant that his provision of these extensions of time, without informing Debtor or seeking her consent, was appropriate.

Even if these extensions of time to Swift are "procedural," and granting them is within Mr. Gorginian's implied authority as Debtor's lawyer, or Swift may have filed a motion to obtain these extensions of time, or timely filed the Swift Complaint before the September 15 deadline, Mr. Gorginian should not have unnecessarily deprived Debtor of the ability to decide whether she would agree to provide Swift with these extensions. In the Court's view, Mr. Gorginian's actions to avoid obtaining the informed consent of his client do not constitute the conduct of a reasonably prudent and competent lawyer.

The Court concludes that, before Mr. Gorginian decided to provide two extensions of time to Swift and signed the related stipulations, Mr. Gorginian did not keep Debtor reasonably informed about Swift's requests for these extensions, nor did Mr. Gorginian reasonably consult with Debtor about his decisions to enter into each of the related stipulations on Debtor's behalf, without obtaining her consent. Because Mr. Gorginian disregarded his professional and ethical

obligation to consult with Debtor and keep her reasonably informed about procedural decisions concerning Debtor's receipt of a discharge, the Court holds that Debtor's payment of legal fees to Mr. Gorginian in connection with her bankruptcy case was excessive, and the Court will order that Mr. Gorginian disgorge the fees he received for representing Debtor in her bankruptcy case.

## IV. CONCLUSION

The Court will grant, in part, the Disgorgement Motion. Within 30 days following the entry of the order, Mr. Gorginian must return $1,662 in fees to Debtor and file with the Court and serve on Debtor a declaration which evidences that he timely has done so. In addition, if Debtor has not previously received the entire case file from him, Mr. Gorginian must turnover the case file to Debtor.

###

Date: March 3, 2026

Victoria S. Kaufman
United States Bankruptcy Judge